June 16, 2021

**Supreme Court**

No. 2019-467-Appeal.
(P 15-1228)

Michelle Andrade　　　　　:

v.　　　　　　:

Christano Andrade.　　　　:

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Michelle Andrade            :

v.                          :

Christano Andrade.          :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**   The plaintiff, Michelle Andrade, appeals from two Family Court orders—the first denying her motion to relocate with the parties' minor child, and the second granting the motion of the defendant, Christano Andrade, to modify child support.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the order denying the plaintiff's motion to relocate and vacate the order granting the defendant's motion to modify child support.

# I

## Facts and Travel

The parties were married on November 14, 2009, and have one child, a daughter born in 2007. In July 2015, plaintiff filed a complaint for divorce alleging that irreconcilable differences had arisen between them, causing the irremediable breakdown of the marriage. The matter was heard before a Family Court magistrate on September 17, 2015, on which date plaintiff's complaint was granted; the parties were awarded "joint custody of the minor child with physical placement to be with" plaintiff, and defendant was granted "all reasonable rights of visitation." The magistrate also found that the parties had freely and voluntarily entered into a property settlement agreement (PSA) dated September 17, 2015, which was "incorporated by reference but not merged into the final decree." These provisions were reflected in the decision pending entry of final judgment entered on September 29, 2015, and the final judgment of divorce entered on December 23, 2015.

The PSA provided for "joint custody of the minor child with physical placement to be with [plaintiff] and [defendant] to have all reasonable rights to visitation * * * on a schedule of two days, two days, three days per week, alternating weekly."[1] The defendant was to pay child support "in compliance with Rhode Island

---

[1] On cross-examination, plaintiff acknowledged that the parties had changed the visitation schedule, such that each parent was with the child on alternating weeks.

law and federal statutory guidelines." The amount of child support was established at $1,471 per month in accordance with a child-support guideline worksheet filed with the court on September 17, 2015.[2]

On June 1, 2018, plaintiff filed a motion to relocate with the minor child. The plaintiff stated that "[f]or purposes related to her employment, and otherwise related to the welfare and happiness of herself and the parties' minor child, [plaintiff] wishes to relocate with the minor child to New Jersey in the near future." The plaintiff also asserted that "[i]t is the [*sic*] best interest of the parties' minor child for the minor to relocate with [plaintiff] to New Jersey for multiple reasons, including considerations related to the financial and emotional well-being of the child." On June 29, 2018, defendant filed an objection to plaintiff's motion, emphasizing the shared parenting plan in place, his responsibilities of taking the child to health-related visits, and the fact that the parties' families were located in Rhode Island.

On the same day as the filing of his objection, defendant also filed a motion to modify child support. In support of that motion, defendant stated that "the parties have for years maintained a shared parenting arrangement [and, therefore,] the calculation of the child support should be done in such a fashion to take into

---

[2] The defendant testified that, at the time of the trial, he was paying plaintiff $1,350 per month in child support. The plaintiff's counsel also represented that defendant had reduced the original child-support obligation, but that a motion to adjudge him in contempt had not been filed.

consideration the shared parenting arrangement of the parties[.]" The plaintiff objected to this motion. The parties subsequently agreed to the appointment of Attorney Kerry I. Rafanelli as the guardian *ad litem* for the minor child in relation to these proceedings.

A hearing on both motions was held on September 25, 2019, at which the parties and Attorney Rafanelli were the only witnesses. The plaintiff testified that she wanted to relocate to New York or New Jersey because that is where the insurance industry, in which she works, is primarily located and it would help her professionally in her "career growth[.]" She further stated that her goal was to become a compliance officer, but that she had been unsuccessful in her efforts to secure such employment in Rhode Island. The plaintiff also testified that she had been offered a position with New York Life in White Plains, New York. Although the job would have increased her salary by $16,000, she did not accept the offer because she could not relocate with the child. The plaintiff's current employer, however, agreed to match that offer, ultimately increasing plaintiff's salary by the same amount. The plaintiff also submitted a proposed visitation schedule into evidence that would allow defendant to see the child "as close to half" of the time as possible.

Attorney Rafanelli testified that, in his report, he "recommended that the motion for relocation be denied." He summarized his report, stating that he

"received, reviewed and considered information from each of the parties to include their self[-]reporting, school records, medical records, position statements in the form of Guardian Ad Litem worksheets; and then, utilizing all the facts and circumstances as presented, as well as conducting a home study of each parent's home wherein I met the child * * *, I applied the *Pettinato*[ *v. Pettinato*, 582 A.2d 909, 913-14 (R.I. 1990)] factors, so-called, and the *Dupré*[ *v. Dupré*, 857 A.2d 242, 257 (R.I. 2004)] factors, so-called, against the facts as presented by mother in support of her motion for relocation and father in opposition to that. So, I weighed the facts and circumstances as presented and applied, through my eyes as a Guardian Ad Litem, the appropriate case law factors."

Attorney Rafanelli also recommended that "the parents recognize the fact that it's a shared parenting arrangement" between them.

The defendant testified that, although the rotation of when he and plaintiff had possession of the child had changed since the initial arrangement, they each still had the child for the same amount of days in a calendar year. The defendant also testified that he had a number of concerns regarding their child relocating:

"[O]ne of which is continuity with schools. She went to three different elementary schools. She's been now in a middle school. In terms of stability within her own family structure, my family is very actively engaged. My mother, my father, my grandparents, they have ongoing, continuous relationships with them, where being in New York City would be prohibitive for her to maintain. I personally am actively involved in all elements of [the child's] life, in addition to [plaintiff]. I've been to every school event that she's had. * * * I maintain continuity with her social relationships by hosting sleepovers, bringing her to the bowling alley, and doing all the things a kid generally does[.]"

- 5 -

The defendant further testified that he did not believe he could have the same relationship with the child if she were to relocate with plaintiff.

On October 8, 2019, the trial justice rendered a bench decision. He found that plaintiff had "failed to sustain her burden of proof under either *Dupré* or *Pettinato* relative to a request to relocate; and * * * that it's not in [the child's] best interest to relocate to either the New Jersey or New York area." As to defendant's motion to modify child support, the trial justice found that "the [g]uideline as presented [in the initial divorce] was in error at that time and completely unfair to the [d]efendant. As indicated, it took no consideration for the shared placement and should have." The trial justice modified defendant's child-support obligation from $1,300 per month to $765 per month, retroactive to June 29, 2018. He then further reduced the ongoing support payments by $383 per month, until such time as the amount defendant had "overpaid" since June 29, 2018—$15,165—is satisfied.

Orders were entered reflecting the trial justice's decision. On appeal, plaintiff contends that the Family Court erred both in denying her motion to relocate and in granting defendant's motion to modify. We address her arguments in turn.

## II

### The Denial of the Motion to Relocate

The plaintiff argues that the trial justice erred in denying her motion to relocate by "overlooking and/or misconceiving evidence." The plaintiff contends

that the trial justice misstated and misunderstood the evidence presented in determining that an increase in income was her sole motivating factor in wanting to relocate, when she presented evidence that she was looking to move forward in her career path towards becoming a compliance officer in the life insurance industry. She also argues that the trial justice overlooked evidence that the child desired to relocate and that moving would enhance the overall quality of their lives. Lastly, plaintiff argues that the trial justice erred in ruling against the admissibility of evidence that plaintiff had attempted to present regarding alleged prior acts of domestic violence by defendant.

## A

### Standard of Review

"On review, this Court will not disturb the findings of fact made by a justice of the Family Court with respect to the issue of custody and the best interests of the child unless the hearing justice abused his or her discretion in making such findings." *DePrete v. DePrete*, 44 A.3d 1260, 1270 (R.I. 2012). "It is the trial justice who is in the best position to determine what factors [regarding relocation] may be relevant on a case-by-case basis, and [his or her] discretion in this regard should not be unduly constrained." *Dupré*, 857 A.2d at 257. We will affirm the trial justice's award concerning custody and the best interests of the child unless his or her "factual findings 'overlooked or misconceived material evidence or were clearly wrong.'"

*DePrete*, 44 A.3d at 1270 (quoting *McDonough v. McDonough*, 962 A.2d 47, 52 (R.I. 2009)).

**B**

**Discussion**

This Court has articulated the relevant factors to be considered when a motion for relocation is at issue as follows:

> "[P]arties either seeking or opposing the relocation of their minor children should present relevant evidence concerning[:]
>
> "(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent. * * *
> "* * *
> "(2) The reasonable likelihood that the relocation will enhance the general quality of life for both the child and the parent seeking the relocation, including, but not limited to, economic and emotional benefits, and educational opportunities. * * *
> "(3) The probable impact that the relocation will have on the child's physical, educational, and emotional development. * * *
> "(4) The feasibility of preserving the relationship between the non-relocating parent and child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties. * * *
> "* * *
> "(5) The existence of extended family or other support systems available to the child in both locations. * * *
> "(6) Each parent's reasons for seeking or opposing the relocation.
> "* * *

"(7) In cases of international relocation, the question of whether the country to which the child is to be relocated is a signatory to the Hague Convention on the Civil Aspects of International Child Abduction[.] * * *

"(8) To the extent that they may be relevant to a relocation inquiry, the *Pettinato* factors also will be significant." *Dupré*, 257 A.2d at 257-59.

This Court has also repeatedly recognized that "no single *Dupré* factor is dispositive and that each case will present its own unique circumstances that a trial justice must balance and weigh as he or she deems appropriate." *Saltzman v. Saltzman*, 218 A.3d 551, 557 (R.I. 2019) (quoting *Ainsworth v. Ainsworth*, 186 A.3d 1074, 1082 (R.I. 2018)). Further, "[i]t is a firmly established principle in family law that the 'paramount consideration' in relocation cases is *the best interests of the child or children*." *DePrete*, 44 A.3d at 1271.

This Court has reiterated the "identifiable factors that must be weighed in the best interests of the child analysis when relevant[,]" also known as the "*Pettinato* factors." *Pettinato*, 582 A.2d at 913. Those factors are:

"1. The wishes of the child's parent or parents regarding the child's custody.

"2. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

"3. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings, and any other person who may significantly affect the child's best interest.

"4. The child's adjustment to the child's home, school, and community.

"5. The mental and physical health of all individuals involved.

"6. The stability of the child's home environment.

"7. The moral fitness of the child's parents.

"8. The willingness and ability of each parent to facilitate a close and continuous parent-child relationship between the child and the other parent." *Id.* at 913-14 (footnotes omitted).

The trial justice weighed several of the applicable *Dupré* factors in coming to his decision. First, he considered plaintiff's reason for seeking relocation, which he found was primarily "for the purpose of enhancing her career." However, he determined that the economic argument as to this career change had been undermined by the fact that plaintiff now makes an amount equal to what she would have made at a new job after relocating. Second, he noted that "the child is performing quite well here in Rhode Island." The trial justice also stated that he had reviewed Attorney Rafanelli's report, which indicated that "[t]here's no evidence of a significant family support network system in the New York/New Jersey area. Maternal grandparents and relatives live in Rhode Island. Paternal relatives live in Rhode Island[.]"

We disagree with plaintiff's assertion that the trial justice misconceived evidence regarding her purpose for relocating. The trial justice weighed plaintiff's reason for relocating—primarily for "enhancing her career"—against other *Dupré* factors, including that relocating would not provide an economic benefit to plaintiff

- 10 -

and the child. These were both appropriate considerations, as separate *Dupré* factors, that the trial justice balanced and weighed. *See Saltzman*, 218 A.3d at 557.

As to plaintiff's assertion that the trial justice overlooked evidence that the child wanted to relocate, "we have said that 'the trial justice need not refer to every piece of evidence, rather he must refer to the specific evidence that prompted his decision.'" *Saltzman*, 218 A.3d at 558 (brackets omitted) (quoting *H.J. Baker & Bro., Inc. v. Orgonics, Inc.*, 554 A.2d 196, 202 (R.I. 1989)). It is clear that the trial justice considered the best interest of the child in focusing on the child's support system in Rhode Island and the fact that she was performing well in Rhode Island. Although the parties agreed that the child had expressed a desire to relocate with plaintiff, the trial justice clearly found that these other factors outweighed this desire and contributed more substantially to the child's overall wellness.

Lastly, we address plaintiff's argument that the trial justice overlooked evidence regarding past instances of domestic violence. However, this issue was only briefly touched upon at the trial. That colloquy went as follows:

> "[PLAINTIFF'S COUNSEL:] * * * Briefly, what led to the breakdown of the marriage?
>
> "[DEFENSE COUNSEL]: Objection, Your Honor.
>
> "THE COURT: Sustained.
>
> "[DEFENSE COUNSEL]: No relevance whatsoever.
>
> "THE COURT: Sustained.

- 11 -

"[PLAINTIFF'S COUNSEL:] Did you have a drinking problem around that time?

"[DEFENSE COUNSEL]: Objection, Your Honor.

"THE COURT: Sustained.

"[PLAINTIFF'S COUNSEL:] Was there ever an instance of physical abuse to my client?

"[DEFENSE COUNSEL]: Objection, Your Honor.

"THE COURT: Sustained.

"[PLAINTIFF'S COUNSEL:] Did you ever assault my client?

"[DEFENSE COUNSEL]: Objection, Your Honor.

"THE COURT: Sustained.

"[PLAINTIFF'S COUNSEL]: Nothing further."

The plaintiff has not presented any argument, here or in the trial court, regarding why these questions were relevant to her motion to relocate. She was not attempting to relocate out of fear of defendant, nor was she seeking sole custody, nor even to reduce defendant's time with the child significantly. She, in fact, had submitted a proposed visitation schedule that would allow defendant to be with the child "as close to half [the time] as [she] could get[.]"

The plaintiff has not only failed to articulate why this line of questioning was relevant, she has also failed to preserve the issue for appellate review. "This Court

has long adhered to an important jurisprudential principle commonly referred to as 'the raise or waive rule.'" *In re Shy C.*, 126 A.3d 433, 434 (R.I. 2015). "That venerable rule provides that 'an issue that has not been raised and articulated previously at trial is not properly preserved for appellate review.'" *Id.* at 434-35 (quoting *State v. Gomez*, 848 A.2d 221, 237 (R.I. 2004)). Thus, because plaintiff did not articulate any argument at trial regarding the admissibility of such evidence, she is precluded from raising the issue on appeal.

The trial justice clearly considered the relevant *Dupré* factors, weighing and balancing them to conclude that relocation was not in the best interest of the child. "As we have held, we accord great deference to the sound discretion of the trial justice in assessing and weighing these factors because 'it is the trial justice who is in the best position to determine what factors may be relevant on a case-by-case basis.'" *Saltzman*, 218 A.3d at 558 (quoting *Ainsworth*, 186 A.3d at 1083). The trial justice in the present case clearly found that the factors weighing in favor of relocation did not outweigh the benefits of the child remaining in Rhode Island. For these reasons, we find that the trial justice did not overlook or misconceive material evidence in denying plaintiff's motion to relocate.

## III

## Motion to Modify Child Support

The plaintiff also contends that the trial justice erred in failing to consider the relevant factors under G.L. 1956 § 15-5-16.2(a)[3] and by failing to make the findings required by §§ 15-5-16.2(a), 15-5-16.2(c)(2),[4] 15-5-16.2.4,[5] and 15-5-16.7.[6]

---

[3] General Laws 1956 § 15-5-16.2(a) states:

> "In a proceeding for divorce, divorce from bed and board, a miscellaneous petition without the filing of divorce proceedings, or child support, the court shall order either or both parents owing a duty of support to a child to pay an amount based upon a formula and guidelines adopted by an administrative order of the family court. If, after calculating support based upon court established formula and guidelines, the court, in its discretion, finds the order would be inequitable to the child or either parent, the court shall make findings of fact and shall order either or both parents owing a duty of support to pay an amount reasonable or necessary for the child's support after considering all relevant factors including, but not limited to:
>
> "(1) The financial resources of the child;
> "(2) The financial resources of the custodial parent;
> "(3) The standard of living the child would have enjoyed had the marriage not been dissolved;
> "(4) The physical and emotional condition of the child and his or her educational needs; and
> "(5) The financial resources and needs of the non-custodial parent, provided, that in establishing a child-support order, incarceration may not be treated as voluntary unemployment."

---

[4] Subsection 15-5-16.2(c)(2) states:

> "After a decree for support has been entered, the court may, from time to time upon the petition of either party, or by the state in accordance with subsection (c)(3) of this section, review and alter its decree relative to the amount of support and the payment of it, and may make any decree relative to it that it might have made in the original suit. The decree may be made retroactive in the court's discretion only to the date that notice of a petition to modify was given to the adverse party if the court finds that a substantial change in circumstance has occurred; provided, that the court shall set forth in its decision the specific findings of fact that show a substantial change in circumstances and upon which findings of facts the court has decided to make the decree retroactive. In modifying the order, incarceration may not be treated as voluntary unemployment that would prevent the motion from being heard or result in a denial of the motion. The child-support order shall continue in full force and effect, by wage withholding, after the youngest child is emancipated, and shall be applied towards any arrearage due and owing, as indicated on the child-support computer system. Upon satisfaction of the arrears due and owing the child-support order shall be automatically suspended and wage withholding terminated without the necessity of returning to family court."

[5] Section 15-5-16.2.4 states, in part:

> "Notwithstanding the provisions of § 15-5-16.2, the court, in its discretion, may modify a child support order retroactively only to the date that notice of a petition to modify was given to the adverse party if it finds that a substantial change in circumstances has occurred. The court shall set forth in its decision the specific findings of fact which show a substantial change in circumstances and upon which findings of fact the court has decided to make its order of modification retroactive."

Before reaching the merits of this issue, we note that "this case should properly be before us pursuant to a petition for writ of certiorari * * * because an order that modifies child support is not appealable." *Lentz v. Lentz*, 651 A.2d 1242, 1242 (R.I. 1994) (mem.). However, in light of the fact that there is a valid appeal pending before us and in the interests of judicial economy and efficiency, we will treat plaintiff's appeal from this order as a common law writ of certiorari. *See id.*

"When reviewing modification decrees, we have consistently adhered to the majority view that 'the rights of the parties are settled by the existing decree and cannot be altered unless the moving party by a fair preponderance of the evidence shows that subsequent to the entry of that decree a change of circumstances or conditions occurred.'" *McCann v. McCann*, 121 R.I. 173, 175, 396 A.2d 942, 944 (1979) (quoting *Heatherton v. Heatherton*, 110 R.I. 144, 145, 290 A.2d 912, 913

---

[6] The relevant portion of § 15-5-16.7 states:

> "(c) In the case of a request for a review * * * upon the request of either party * * * the amount of support may, in the court's discretion, be modified if the court finds that a substantial change in circumstances has occurred in accordance with § 15-5-16.2. The court, in its discretion, may modify a child-support order retroactively only to the date that notice of a petition to modify was given to the adverse party if the court finds that a substantial change in circumstances has occurred; provided, that the court shall set forth in its decision the specific findings of fact that show a substantial change in circumstances and upon which findings of facts the court has decided to make the decree retroactive."

(1972)).  "Consistent with this view, the moving party must show that subsequent to the final decree, there has been a change in either the needs of the minor child or his [or her] own ability to meet those needs." *Id.* at 175-76, 396 A.2d at 944.  "The decision of a trial justice with respect to the modification of support obligations will not be disturbed on appeal unless the findings on which his [or her] decision is based are clearly wrong, or unless, in making such findings, he [or she] overlooked material evidence or misconceived the applicable law." *Hull v. Hull*, 120 R.I. 77, 79-80, 384 A.2d 1065, 1067 (1978).

In his decision, the trial justice found that "[t]he parties have enjoyed joint custody since the entry of the [initial] decision which was heard by this [c]ourt back on September 17th of 2015[.]"  He went on to explain that

> "if one reads the [PSA] which was entered on the same day the divorce was heard, it takes into consideration a two-day, two-day, three-day, three-day alternate week shared possession agreement between the parties; and, if the [c]ourt reviews the [g]uideline that was also presented on September 15th of 2015, there was absolutely no consideration whatsoever given to the fact that there was a shared possession.  The [c]ourt would find that the [g]uideline as presented was in error at that time and completely unfair to the [d]efendant."

There were, however, a dearth of findings by the trial justice regarding a change of circumstances in either the child's needs or defendant's ability to pay child support.  Indeed, the parties, without amending the PSA or seeking court approval, had altered

the placement schedule to alternating weeks; the end result, however, was the same—the child was placed with each parent an equal amount of time.

Whether or not the guidelines were prepared in error in 2015, the child-support order was agreed to by defendant, approved by the court, and incorporated but not merged into the decision pending entry of final judgment and final judgment of divorce. Any modification of that order under § 15-5-16.2(c)(2) must be supported by a finding that a substantial change in circumstances has occurred. We conclude, therefore, that the trial justice erred by failing to consider the circumstances, or any change thereof, concerning the child's needs or defendant's ability to pay child support. Instead, the trial justice based his decision on the initial agreement being "completely unfair" to defendant; this was not proper. *See McCann*, 121 R.I. at 176, 396 A.2d at 944 (holding that "[t]he decision [of the trial justice] was based solely upon his opinion that the burden imposed by the prior decree was 'too onerous' without considering the possible impact of the modification order upon the mother or child").

Accordingly, we vacate the order granting the defendant's motion to modify child support.

# IV

## Conclusion

For the reasons stated herein, we affirm the order entered by the Family Court denying the plaintiff's motion to relocate, and we vacate the order entered by the Family Court granting the defendant's motion to modify child support. The case is remanded to the Family Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Michelle Andrade v. Christano Andrade. |
| **Case Number** | No. 2019-467-Appeal.<br>(P 15-1228) |
| **Date Opinion Filed** | June 16, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice John E. McCann, III |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Alyssa M. Volpi, Esq.<br>For Defendant:<br><br>Robert M. Brady, Esq. |